IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROBERT WALKER | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 3-08-CV-2051-M |
| | § | |
| ALLIANZ LIFE INSURANCE COMPANY | § | |
| OF NORTH AMERICA, ET AL. | § | |
| | § | |
| Defendants. | § | |

## FINDINGS AND RECOMMENDATION OF THE
## UNITED STATES MAGISTRATE JUDGE

This case has been referred to the United States magistrate judge for initial screening pursuant to 28 U.S.C. § 636(b) and a standing order of reference from the district court. The findings and recommendation of the magistrate judge are as follow:

I.

This is a *pro se* civil action brought by Plaintiff Robert Walker, individually and on behalf of his defunct company, PandaEye, LLC ("PandaEye"), against Allianz Life Insurance Company of North America ("Allianz"), GamePlan Financial Marketing, LLC ("GamePlan"), and others for violations of the federal RICO statute, breach of implied contract, fraud, negligent misrepresentation, civil conspiracy, and defamation. On November 17, 2008, plaintiff tendered a 19-page complaint to the district clerk and filed an application to proceed *in forma pauperis*. Because the information provided by plaintiff in his pauper's affidavit indicates that he lacks the funds necessary to prosecute this case, the court granted leave to proceed *in forma pauperis* and allowed the complaint to be filed.

The court then sent a RICO Case Statement to plaintiff in order to obtain additional information about the facts and predicate acts made the basis of his RICO claim. Plaintiff was ordered to file the RICO Case Statement by January 20, 2009, but he failed to do so. The court now determines that plaintiff has failed to sufficiently plead a federal RICO violation, has not met the heightened pleading requirements for bringing a fraud or negligent misrepresentation claim, and has failed to state a claim for civil conspiracy, defamation, and breach of implied contract under Texas law. In addition, plaintiff lacks authority to file pleadings or assert claims on behalf of PandaEye. For these reasons, the complaint should be summarily dismissed without prejudice.

II.

GamePlan is a Field Marketing Organization ("FMO") owned by Allianz through which independent agents and financial advisors sell life insurance products. (*See* Plf. Compl. at 3, ¶¶ 18-19). In October 2007, plaintiff formed PandaEye, a Texas limited liability company, hoping his new company would become GamePlan's exclusive marketing arm. (*See id.* at 3, ¶ 20). After a successful test-run of marketing materials, or "mailers," individual agents affiliated with GamePlan began contracting with PandaEye for their marketing needs. (*See id.* at 4, ¶¶ 21-22). However, in January 2008, Allianz forced PandaEye to make changes to the mailers that reduced their effectiveness, creating dissension among GamePlan agents who had contracted with PandaEye. (*See id.* at 4-6, ¶¶ 22, 27). Despite publicly blaming PandaEye for the low response rates to the mailers, GamePlan promised to contact agents via e-mail confirming its partnership with PandaEye and guaranteeing that "nobody would lose a penny that they had invested with PandaEye." (*See id.* at 5-6, ¶¶ 24-25, 27). No such e-mail was ever sent. (*See id.* at 5, ¶ 25).

Over the next few months, the PandaEye marketing program began to unravel. Dissatisfied agents who had contracted with PandaEye demanded refunds, or "charge backs," of their monies. (*Id.* at 5-6, ¶¶ 26-28). PandaEye's merchant accounts were closed by the bank as part of an internal fraud investigation. (*See id.* at 7, ¶ 34). Although GamePlan initially agreed to resolve the "charge back" issue, (*see id.* at 7, ¶ 31), GamePlan later reneged and "pull[ed] the plug on PandaEye." (*See id.* at 7, ¶ 35). Plaintiff further alleges that Robert Putnam, an Allianz agent enlisted through GamePlan, failed to follow through on his promise to "put together a coalition of agents to ensure PandaEye's survival," and engaged in other conduct to the detriment of the company. (*See id.* at 8-9, ¶¶ 38-43). On July 8, 2008, PandaEye was forced to close as a result of its many legal problems, including the "charge backs" filed by GamePlan agents. (*See id.* at 8, ¶ 39).

Plaintiff now sues defendants for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*, as well as breach of implied contract, fraud, negligent misrepresentation, civil conspiracy, and defamation under Texas law. By this suit, plaintiff seeks unspecified compensatory and punitive damages, injunctive and equitable relief, attorney's fees, and court costs.

A.

A district court may summarily dismiss a complaint filed *in forma pauperis* if it concludes that the action:

(1) is frivolous or malicious;

(2) fails to state a claim on which relief may be granted; or

(3) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B). In order to state a claim on which relief may be granted, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). While a complaint does not need detailed factual allegations, the plaintiff must allege more than "labels," "conclusions," and "formulaic recitation[s] of the elements of a cause of action[.]" *See Twombly*, 127 S.Ct. at 1964-65. "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Id.* at 1965. The court must accept all well-pleaded facts as true and view the allegations in the light most favorable to the plaintiff. *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007), *cert. denied*, 128 S.Ct. 1231 (2008).

Cases involving fraud are subject to more stringent pleading requirements. In such cases, "a party must state with particularity the circumstances constituting fraud[.]" FED. R. CIV. P. 9(b); *see also Tel-Phonic Servs., Inc. v. TBS International, Inc.*, 975 F.2d 1134, 1138-39 (5th Cir. 1992) (citing cases) (Rule 9(b) particularity requirement applies to a RICO claim where fraud is alleged as a predicate act). At a minimum, this heightened pleading standard requires the plaintiff "to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Nathenson v. Zonagen Inc.*, 267 F.3d 400, 412 (5th Cir. 2001), *quoting Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 177 (5th Cir.), *cert. denied*, 118 S.Ct. 412 (1997). Although fraud pleadings may be based on information and belief if certain facts are peculiarly within the knowledge of the opposing party, "this luxury must not be mistaken for license to base claims of fraud on speculation and conclusory allegations." *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994), *quoting Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990) (internal quotations omitted).

B.

The court initially observes that plaintiff, who is not a lawyer, cannot file pleadings or bring this action on behalf of PandaEye. The Fifth Circuit has held that "a corporation as a fictional legal person can only be represented by licensed counsel." *Donovan v. Road Rangers Country Junction, Inc.*, 736 F.2d 1004, 1005 (5th Cir. 1984), *cert. denied*, 105 S.Ct. 1198 (1985) (citing cases). The same rule applies with equal force to limited liability companies. *See Weyend v. Hubman Foundation*, No. 4-06-CV-343, 2007 WL 3377162 at *1 (E.D. Tex. Jun. 28, 2007). Moreover, "a member of a limited liability company is not a proper party to proceedings by or against a limited liability company, except where the object is to enforce a member's right against or liability to the limited liability company." *Id.*, 2007 W 3377162 at *1, *citing* TEX. REV. CIV. STAT. ANN. art. 1528n (Vernon 2006). Neither of those exceptions apply here.

Plaintiff lacks authority to file pleadings or assert claims on behalf of PandaEye. For that reason alone, any claims that belong exclusively to PandaEye should be summarily dismissed without prejudice.[1]

C.

Even if the court overlooks this defect, plaintiff has not met the heightened pleading requirements for bringing a fraud or negligent misrepresentation claim under Texas law. The elements of fraud are: (1) a material misrepresentation; (2) that was false when made; (3) the defendant either knew the representation was false or asserted it without knowledge of its truth; (4) the defendant intended that the representation be acted upon; (5) the plaintiff acted in reliance on the

---

[1] The only claims that possibly belong to plaintiff, individually, are those for fraud, negligent misrepresentation, and defamation.

representation; and (6) the plaintiff was injured as a result. *See Malacara v. Garber*, 353 F.3d 393, 403-04 (5th Cir. 2003), *citing Formosa Plastics Corp. USA v. Presidio Engineers and Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998). The elements of negligent misrepresentation are: (1) a representation made by a defendant in the course of his business, or in a transaction in which the defendant has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the information. *See Clardy Manufacturing Co. v. Marine Midland Bus. Loans Inc.*, 88 F.3d 347, 357 (5th Cir. 1996), *cert. denied*, 117 S.Ct. 740 (1997), *citing Federal Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991). Where the alleged fraud and negligent misrepresentations are based on the same set of facts, the Rule 9(b) pleading standard applies to both claims. *See Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 723 (5th Cir. 2003).

In his complaint, plaintiff has not specifically identified any representations made by defendants which he contends were fraudulent. Nor has plaintiff pled the "who, what, when, and where" with regard to any such representations. In fact, plaintiff identifies only three defendants who made any kind of representations at all. When plaintiff questioned Tim Komis, a Senior Vice President of GamePlan, why an email confirming the partnership with PandaEye had not been sent to agents, Komis allegedly responded, "[W]e are still talking through the letter. As discussed we will run by you befor [sic] sending." (*See* Plf. Compl. at 5, ¶ 25). Plaintiff further alleges that Robert Putnam deceived him by "promising to pay monies to PandaEye for continued services as well as to put together a coalition of agents to ensure PandaEye's survival." (*See id.* at 8, ¶ 38). On another occasion, Juan Butler, the President of GamePlan, chastised plaintiff "for the tone of an email

plaintiff had sent out as [he] did not mention GamePlan's partnership with PandaEye and that the charge backs were the cost of doing business with GamePlan." (*See id.* at 7, ¶ 35). Even if these statements could give rise to an actionable claim for fraud or negligent misrepresentation, there are no allegations anywhere in the complaint that Komis, Putnam, and Butler knew the statements were false when made or that they intended plaintiff to act on the statements. The court therefore concludes that these claims should be summarily dismissed.

D.

Nor has plaintiff stated a claim for conspiracy or defamation. Under Texas law, the elements of a civil conspiracy are: (1) two or more persons; (2) an objective to be accomplished; (3) a meeting of the minds on the objective; (4) one or more unlawful overt acts; and (5) damages as a proximate result of the conduct. *See Murray v. Earle*, 405 F.3d 278, 293 (5th Cir.), *cert. denied*, 126 S.Ct. 749 (2005), *citing Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983). Defamation is a false statement about a person, published to a third party, without legal excuse, which damages the person's reputation. *See Fiber Systems International, Inc. v. Roehrs*, 470 F.3d 1150, 1161 (5th Cir. 2006), *citing Moore v. Waldrop*, 166 S.W.3d 380, 384 (Tex. App.--Waco 2005, no pet.). "Publication of defamatory words means to communicate orally, in writing, or in print to some third person capable of understanding their defamatory import and in such a way that he did so understand." *Ramos v. Henry C. Beck Co.*, 711 S.W.2d 331, 335 (Tex. App.--Dallas 1986, no writ).

Other than the conclusory assertion that defendants conspired to put PandaEye out of business, plaintiff makes no attempt to plead facts which, if proved, constitute a civil conspiracy. The closest plaintiff comes to pleading a claim for defamation is an allegation that one of the defendants "pass[ed] around an arrest record for a Robert Walker that included charges of armed

robbery and other aggravated violent crimes." (*See* Plf. Compl. at 9, ¶ 42). However, plaintiff has not clearly identified the defendant who allegedly circulated the false arrest report, or alleged when and to whom the false report was disseminated. Without these facts, plaintiff has failed to plead a defamation claim.

E.

Plaintiff also sues for breach of implied contract. Like his other claims, plaintiff does not plead any facts to support his breach of contract claim. Nowhere in the complaint does plaintiff specify the terms of any contract, express or implied, between himself and defendants. To the extent plaintiff maintains that GamePlan entered into some kind of agreement with PandaEye for the marketing of Allianz insurance products, or that Putnam promised to "pay monies to PandaEye for continued services" or "put together a coalition of agents to ensure PandaEye's survival," those claims belong to PandaEye--not plaintiff.

F.

The focal point of plaintiff's complaint is his RICO claim. Under the RICO statute:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). The RICO statute also prohibits a person from conspiring to violate the provisions of section 1962(c). *Id.* § 1962(d). Reduced to their simplest terms, the elements of a RICO claim are: "(1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise." *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007), *quoting Word of Faith World Outreach Center Church, Inc. v. Sawyer*, 90

-8-

F.3d 118, 122 (5th Cir. 1996), *cert. denied*, 117 S.Ct. 1248 (1997). A "pattern" requires at least two predicate acts that are related to each other and constitute or threaten long-term criminal activity. *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989); *In re Burzynski*, 989 F.2d 733, 742 (5th Cir. 1993). In order to satisfy the "continuity" requirement, the predicate acts or offenses must involve either "a closed period of repeated conduct," or "past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc.*, 109 S.Ct. at 2902; *see also Calcasieu Marine Nat'l Bank v. Grant*, 943 F.2d 1453, 1463 (5th Cir. 1991). "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement." *H.J. Inc.*, 109 S.Ct. at 2902.

Because plaintiff has not filed a RICO Case Statement,[2] the court looks to his complaint to determine whether he has pled the elements of a RICO claim. Plaintiff generally alleges that defendants and their "co-conspirators" committed the predicate acts of mail fraud, wire fraud, bank fraud, making false statements to financial institutions, extortion, and transporting stolen property across state lines--all in violation of federal law. (*See* Plf. Compl. at 14-15, ¶ 65). Even if these predicate acts are sufficiently related to constitute a "pattern of racketeering activity," plaintiff has failed to satisfy the "continuity" prong of the RICO statute. All the predicate acts alleged by plaintiff in his complaint occurred between March 2008 and July 2008. A period of five months is not sufficient to demonstrate continuity over a closed period. *See Tel-Phonic Servs.*, 975 F.2d at 1140 (plaintiff failed to establish closed-ended continuity where predicate acts occurred "only seven months apart"). At most, the conduct giving rise to plaintiff's RICO claim occurred between October

---

[2] The Fifth Circuit has observed that a RICO Case Statement "is a useful, sometimes indispensable, means to understand the nature of the claims asserted and how the allegations satisfy the RICO statute." *Marriott Bros. v. Gage*, 911 F.2d 1105, 1107 (5th Cir. 1990).

2007, when PandaEye was created, and July 2008, when the company went out of business. That 10-month period is also insufficient to demonstrate closed-ended continuity. *See Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1266-67 (11th Cir. 2004) (citing multiple circuit court cases holding that closed-end continuity is not established where predicate acts occur over a period of less than one year).

Nor has plaintiff established continuity under a "threat of repetition" theory. According to plaintiff, the object of the RICO conspiracy was "to ensure PandaEye was forced to close and that plaintiff would no longer be able to conduct business." (*See* Plf. Compl. at 9, ¶ 45). Such a scheme is inherently finite and does not, by its nature, project into the future, particularly since PandaEye went out of business in July 2008. *See, e.g. GICC Capital Corp. v. Technology Finance Group, Inc.*, 67 F.3d 463, 466 (2d Cir. 1995), *cert. denied*, 116 S.Ct. 2547 (1996) ("It defies logic to suggest that a threat of continued looting activity exists when [ ] there is nothing left to loot."); *FD Property Holding, Inc. v. U.S. Traffic Corp.*, 206 F.Supp.2d 362, 371 (E.D.N.Y. 2002) ("Allegations of conduct that by its nature or design has an intended and foreseeable endpoint will not constitute open-ended continuity."); *Meade v. Meade*, No. 91-5515, 1991 WL 243539 at *3 (E.D. Pa. Nov. 18, 1991), *aff'd*, 998 F.2d 1004 (Table) (3d Cir. 1993) (open-ended continuity not established where all assets were drained away from business targeted by defendants through predicate acts). Although plaintiff alleges that PandaEye remains liable to its agents and is the subject of ongoing investigations by state law enforcement authorities, those are the *effects* of the prior predicate acts committed by defendants. That is distinctly different from showing a "threat of repetition" of past conduct that projects into the future. Plaintiff's conclusory assertion that defendants have engaged in similar conspiracies to close other businesses, and his passing reference to "numerous lawsuits"

filed against defendants and their agents for "identical schemes," (*see* Plf. Compl. at 10, ¶ 48), are insufficient to establish a future threat of criminal activity. *FD Property Holding,* 206 F.Supp.2d at 371 (finding no continuity where allegation that defendants regularly conducted business through similar fraudulent schemes was wholly conclusory and unsupported by facts); *see also Hawkins v. Hutchison,* 277 Fed.Appx. 518, 519, 2008 WL 2001919 at *1 (5th Cir. May 9, 2008) ("bald assertions and allegations unsupported by facts" are insufficient to support a RICO claim).[3]

## RECOMMENDATION

Plaintiff has failed to sufficiently plead a federal RICO violation, has not met the heightened pleading requirements for bringing a fraud or negligent misrepresentation claim, and has failed to state a claim for civil conspiracy, defamation, and breach of implied contract under Texas law. In addition, plaintiff lacks authority to file pleadings or assert claims on behalf of PandaEye. Consequently, plaintiff's complaint should be summarily dismissed without prejudice.

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party may file written objections to the recommendation within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). The failure to file written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996).

---

[3] Ordinarily, the court would give plaintiff an opportunity to replead his RICO claim. *See Southwest Realty, Ltd. v. Daseke,* No. 3-89-CV-3055-D, 1990 WL 85921 at *5 (N.D. Tex. May 9, 1990) (allowing plaintiff to file an amended complaint within 30 days of dismissal of RICO claim). However, plaintiff has forfeited that opportunity by failing to file a RICO Case Statement as directed by the court.

DATED: February 12, 2009.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE